IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TONY BETTIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 10-2457-JAR |
| | ) |
| GARY L. HALL, et al., | ) |
| | ) |
| Defendants. | ) |

# **ORDER**

This case comes before the undersigned U.S. Magistrate Judge, James P. O'Hara, on the motion of defendant Gary L. Hall to compel production of documents **(doc. 38)**. The instant motion is fully briefed (*see* docs. 39, 40, & 43).

On August 17, 2010, the plaintiffs, Tony Bettis, Eric Comeau, Stephen Seat, and National Realty Capital, LLC ("NRC"), filed a complaint against Hall, Bentley Investments of Nevada, LLC ("Bentley Investments"), and the Gary L. Hall Revocable Trust ("the Trust") asserting claims for breach of contract and quantum meruit arising out of an agreement regarding real estate lending and developing real estate equity partnerships (doc. 1).[1] The agreement is titled "Funding Agreement" (doc. 1, at 11-15). On January 21, 2011, Hall filed an amended answer and counterclaim asserting plaintiffs breached the Funding Agreement (doc. 27). Plaintiffs then filed an answer to Hall's counterclaim (doc. 29).

---

[1]Bentley Investments and the Trust filed a motion to dismiss both claims in plaintiffs' complaint (doc. 9). Hall filed an answer (doc. 8) and a motion to dismiss plaintiffs' quantum meruit claim (doc. 10). Defendants' motions to dismiss are currently pending before the court.

On January 11, 2011, Hall served his first requests for production of documents on plaintiffs (doc. 38, ex. A).[2] On February 10, 2011, plaintiffs served joint responses to Hall's first requests for production of documents (doc. 38, ex. B). Hall seeks an order compelling plaintiffs to produce two categories of documents that he argues are reasonably calculated to lead to the discovery of admissible evidence. Specifically, Hall seeks documents relating to all real estate projects originated under the Funding Agreement under Request Nos. 1-2, 16-21, and 23-24. Hall also seeks plaintiffs' cell phone records during the period of time they were working full-time under the Funding Agreement under Request No. 22.

**Documents Relating to Real Estate Projects**

Hall states that the Funding Agreement appears to provide that under certain circumstances, plaintiffs could share in project profits once aggregate overhead advanced by Hall was repaid. Hall states that plaintiffs' complaint seeks payment for eight projects[3] but that more than eight projects were funded under the Funding Agreement. Hall requested documentation on all real estate projects under the Funding Agreement and argues that the profitability and overhead of the additional projects are material to the calculation of any funds claimed by plaintiffs. Hall also argues financial and due diligence records of the

---

[2]Hall notes that exhibit A to his motion to compel is a template and that identical requests were propounded to each plaintiff.

[3]The eight projects identified in plaintiffs' complaint are: Weibel-RBND, Morley SWAT, Shorefox, Grand Elk, MCFD, SWAT 15, Porchlight, and Grand Lodge. Doc. 1, at 5, para. 15.

additional projects are pertinent to his counterclaim that plaintiffs breached their duties under the Funding Agreement.

In their responses to Hall's requests for production of documents, plaintiffs appear to have agreed to produce documents relating to the eight projects identified in their complaint but objected to producing documents relating to any other projects. To each of Hall's requests seeking documents relating to additional projects, plaintiffs objected that the request "seeks documents related to events that do not pertain to this lawsuit, that it is overbroad, burdensome, not sufficiently limited in time and scope and not relevant to the claims or defenses raised in this case as required by Fed. R. Civ. P. 26."[4]

In their response to the instant motion, however, plaintiffs agree that they "will provide documents and records relative to the open projects except for Request Nos. 20 and 21 relative to Terra Bentley I, LLC and Terra Bentley II, LLC."[5] Plaintiffs state that all documents and records previously possessed by them relative to Terra Bentley I, LLC and Terra Bentley II, LLC have been turned over to attorneys for Hall, specifically the law firms of Kutak Rock, LLP and McDowell, Rice, Smith & Buchanan, P.C. Plaintiffs state that they did not retain originals or copies of the files on those two projects. Plaintiffs then conclude that the balance of the records requested is voluminous and will be provided at Hall's expense. Plaintiffs appear to request an order requiring Hall to pay the expense of the production arguing that Hall has ceased funding NRC's overhead for services rendered under

---

[4]*E.g.*, doc. 38, ex. B, at 3.

[5]Doc. 40, at 3.

the Funding Agreement. Plaintiffs also request an additional 30-45 days to gather the documents and get them ready for production.

Hall argues that although plaintiffs have agreed to produce project records, plaintiffs qualified their statement that they would produce records relative to the *open* projects except Terra Bentley I, LLC and Terra Bentley II, LLC. Hall notes that he seeks records on all projects, whether open or closed. Hall also argues that if the records are in plaintiffs' possession, it is unclear what expenses of production are involved. Hall objects to paying any expenses involved in plaintiffs' production of their own records in their possession for their own lawsuit, especially when the issue was only raised in response to a motion to compel.

Initially, the court notes that plaintiffs have abandoned all of their objections to Request Nos. 1-2, 16-21, and 23-24, because they have not reasserted them in their response to the instant motion.[6] The court agrees with Hall that plaintiffs' agreement to produce documents regarding the "open" projects is not sufficient. Plaintiffs have not defined what an "open" project is or whether there are any additional projects under the Funding Agreement that plaintiffs are not classifying as "open." Plaintiffs shall therefore produce all documents they have regarding all projects under the Funding Agreement, whether open or closed.

---

[6]*Moses v. Halstead,* 236 F.R.D. 667, 672 & n.8 (D. Kan. 2006) (stating that objections raised in response to a discovery request but not reasserted in response to a motion to compel are deemed waived).

Hall states that plaintiffs did not originally claim they have no records regarding Terra Bentley I, LLC and Terra Bentley II, LLC. Hall argues that by plaintiffs stating the records are in the possession of Hall's attorneys, plaintiffs are implicitly waiving any claims of privilege or any objection to their production. The court need not address whether any privilege has been waived at this time. Although it is unclear why plaintiffs waited until their response to a motion to compel to let Hall know they do not have these records, the court cannot order plaintiffs to produce documents that are not in their possession, custody, or control.[7]

Plaintiffs have not sufficiently supported their argument that the documents are voluminous. Plaintiffs have provided the court no information on the amount of documents or why so much additional time is needed for plaintiffs to produce the documents. The court therefore declines to grant plaintiffs their requested 30-45 day extension to gather and produce the records. Plaintiffs should have started gathering the documents at least by March 23, 2011, when they agreed in their response to produce the documents. Because discovery is set to close May 2, 2011 (*see* doc. 15, at 4, para. 2(b)), plaintiffs shall produce all requested documents regarding the additional projects under the Funding Agreement by **April 11, 2011**.

Plaintiffs have also failed to show why the court should order Hall to pay the expense of such production. Plaintiffs have not shown what expenses they will incur in gathering and

---

[7]*See* Fed. R. Civ. P. 34(a)(1) (stating that a party may serve a request for production of documents or other items in the responding party's possession, custody, or control).

producing the documents. The court therefore declines to make any orders regarding expenses at this time.

**Cell Phone Records**

Request No. 22 seeks "[a]ny and all e-mail and cell phone records of NRC, Terra Bentley, Eric Comeau, and Steven Seat from the date of the execution of the Funding Agreement to the date of resignation of each individual member."[8] Plaintiffs' response to Request No. 22 states that:

> E-mails responsive to Request No. 22 with respect to each of the 8 real estate investment projects identified in Exhibit B to the Complaint will be produced for inspection and copying at the offices of Brown & Ruprecht, PC at a mutually convenient time. Plaintiffs object to producing cell phone records on the grounds that it is overbroad, burdensome, not sufficiently limited in time and scope and not relevant to the claims or defenses raised in this case as required by Fed. R. Civ. P. 26.[9]

In their response to the instant motion, plaintiffs state that Request No. 22 seeks their personal cell phone records for the last five years. After objecting to producing the phone records for the period of 2004-2010 for several reasons, plaintiffs state that "none of the Plaintiffs currently retain in their possession any such cellular telephone records for the last five years."[10]

---

[8]Doc. 36, ex. A, at 3.

[9]Doc. 36, ex. B, at 4.

[10]Doc. 40, at 2.

Request No. 22 seeks records from the date of the execution of the agreement, July 15, 2004,[11] until the dates plaintiffs resigned. Neither Hall nor plaintiffs have provided the court the dates of the plaintiffs' resignations or whether such dates are in dispute. The court cannot determine the exact time frame for which plaintiffs claim they have no cell phone records. As noted by Hall, plaintiffs have once again used qualifying language without clarifying whether any other cell phone records, i.e., those outside of plaintiffs' "last five years" qualification, are in their possession. The court will therefore have to proceed with analyzing plaintiffs' objections.

Further, according to Hall, plaintiffs again waited until their response to the motion to compel to let him know that no cell phone records exist for the last five years. Hall argues that it would have been helpful if plaintiffs provided this information in their response to the requests for production of documents or at counsels' "meet and confer." The court agrees that the parties' meet and confer meeting would have been much more productive if plaintiffs were forthcoming about what documents they do or do not possess and which objections they intended to maintain. Indeed, a productive meet and confer meeting likely would have prevented the necessity of Hall filing the instant motion to compel.

Plaintiffs' objections that Request No. 22 is overbroad, burdensome, and not sufficiently limited in time are deemed waived, as plaintiffs did not raise the objections in their response. Plaintiffs argue that Hall is engaged in a pure fishing expedition by

---

[11]Doc. 1, at 11.

requesting the cell phone records and that Hall has not indicated what he is searching for, the relevance or materiality that the cell phone records might have to the case, or how telephone calls or records may lead to the discovery of relevant or admissible evidence. Plaintiffs also argue that Hall's request for phone records is not supported by an allegation that the use of the phone aided or abetted or was connected to any specific alleged breach of the Funding Agreement. Plaintiffs state they have previously produced all electronic communications of plaintiffs to defendant, among plaintiffs, and from plaintiffs to third parties which were business related to plaintiffs' activities under the Funding Agreement.

Under Fed. R. Civ. P. 26(b)(1), discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense." Relevancy is broadly construed for pretrial discovery purposes. "A party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence."[12] At least as a general proposition, then, "[a] request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party."[13]

> When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance

---

[12]*Mackey v. IBM*, 167 F.R.D. 186, 193 (D. Kan. 1996).

[13]*Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001) (internal quotations and citations omitted).

that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[14]

The question of relevancy "is to be more loosely construed at the discovery stage than at the trial."[15]

In his supporting memorandum, Hall argues that plaintiffs' phone records are relevant, particularly to his counterclaim for breach of contract. Hall notes that he alleges that plaintiffs failed to provide him with records of their activities, failed to work full time in accordance with the contract terms, and failed to sufficiently investigate real estate loans and development projects. Hall argues that he is therefore entitled to inspect these records to pursue his counterclaim and to adequately prepare his defense to plaintiffs' claims. Further, Hall states that he paid for plaintiffs' cell phone usage as part of overhead costs under the Funding Agreement.

In his reply, Hall states that he believes plaintiffs contacted Osage Capital and others, such as Troy Bettis, and disseminated Hall's personal financial information. Hall states that Osage Capital was bidding on assets of the failed Columbian Bank at that time. The assets included notes guaranteed by Hall to Columbian Bank. Hall argues that the cell phone records would establish contacts between plaintiffs and Osage Capital/FDIC/Columbian Bank representatives proving a breach.

---

[14]*Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003) (citations omitted).

[15]8 Charles Allen Wright & Arthur Miller, Federal Practice and Procedure § 2008, at 99 (2d ed. 1994).

In addition to arguing the records are not relevant, plaintiffs make several arguments regarding the personal nature of the phone records and that the request is not sufficiently limited in scope. Plaintiffs argue that the records are the personal telephone records of the individual plaintiffs and not the telephone records of NRC.[16] Plaintiffs argue that they were not employees of Hall, but were independent contractors, and were free to use their phones as they saw fit for any purpose. Plaintiffs also argue that the phone records would contain five or more years of personal calls to family, friends, doctors, and lawyers.

Hall responds that plaintiffs' claims of privacy are overblown. Hall argues that the requested cell phone records would only show the telephone numbers involved and not the substance of any discussions. Hall argues that the dates, numbers called, and length of the conversations would have probative value if improper contacts existed between plaintiffs and representatives of Osage Capital and Columbian Bank, as Hall alleges.

The court finds that the requested cell phone records are relevant to Hall's breach of contract counterclaim. Hall's request for the cell phone records appears reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs have failed to show that the cell phone records do not come within the broad scope of relevance or are of such marginal relevance that the potential harm of revealing their personal calls outweighs the presumption in favor of broad disclosure. As argued by Hall, the phone records would not reveal the substance of any conversations, whether to representatives of Osage Capital and

---

[16]Plaintiffs are perhaps arguing that NRC does not have any telephone records, but they have not made this entirely clear.

Columbian Bank, or to plaintiffs' personal contacts. Plaintiffs are therefore ordered to fully comply with Request No. 22 by **April 11, 2011**, to the extent they have any records from July 15, 2004 until the dates they resigned.

For the reasons stated above, Hall's motion to compel production of documents **(doc. 38)** is granted in part and denied as moot in part. Hall's motion is granted with respect to documents regarding all projects under the Funding Agreement and plaintiffs' cell phone records, to the extent plaintiffs have any such documents or records. Plaintiffs shall produce the documents by **April 11, 2011**. Hall's motion is denied as moot with respect to documents regarding Terra Bentley I, LLC and Terra Bentley II, LLC, which plaintiffs made clear are no longer in their possession.

IT IS SO ORDERED.

Dated April 4, 2011, at Kansas City, Kansas.

                            s/James P. O'Hara
                            James P. O'Hara
                            U.S. Magistrate Judge