jf/lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TONY BETTIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 10-2457-JAR |
| | ) |
| GARY L. HALL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiffs Tony Bettis, Eric Comeau, Stephen Seat, and National Reality Capital, LLC ("NRC"), bring this action against Gary L. Hall ("Hall"), Bentley Investments of Nevada LLC ("Bentley"), and The Gary L. Hall Revocable Trust ("the Trust"), alleging breach of contract and *quantum meruit*. This matter is before the Court on defendants Bentley and the Trust's Motion to Dismiss (Doc. 9), and defendant Hall's Motion to Dismiss the *quantum meruit* claim in Count II (Doc. 10), both brought pursuant to Fed. R. Civ. P 12(b)(6). For the reasons explained below, the Court grants defendants Bentley and the Trust's motion to dismiss the breach of contract claim in Count I, but denies their motion to dismiss the *quantum meruit* claim in Count II. The Court grants Hall's motion to dismiss Count II.

**I.    Background**

The following facts are alleged in plaintiffs' Complaint and taken in the light most favorable to plaintiffs. On July 15, 2004, plaintiffs, with the exception of NRC, executed a Funding Agreement ("the Agreement") with Hall. The Agreement obligated Hall to provide

overhead costs to plaintiffs to enable them to locate real estate investments. The Agreement directed the parties to create "lending entities" to facilitate their real estate investments. The entities were to be funded in large part by Hall. As such, Hall retained veto power over which investments the lending entities would make. Hall also maintained a minimum 70% ownership in the lending entities. The Agreement dictated how the parties would divide profits received by the lending entities. Defendant Bentley was a lending entity created by Hall pursuant to the Agreement. The individual plaintiffs formed NRC to facilitate their work under the Agreement.

The created relationship resulted in investment in at least eight projects, that earned more than eight million dollars in gross profits. Third parties paid defendant Bentley directly. By controlling Bentley, Hall and the Trust were indirectly paid. According to the Agreement, the net profits were to be divided between Hall and the plaintiffs, but Bentley advanced only a small portion of the profits to plaintiff NRC. Plaintiffs have not received the more than one million dollars defendants owe them.

Plaintiffs assert that in failing to advance the profits contractually allocated to them, all defendants have breached the Agreement. Additionally, plaintiffs claim that defendants have been unjustly enriched by retaining the profits and as such, bring a claim of *quantum meruit*. As both parties apply and discuss Kansas law, the Court will apply Kansas law to the pending motions.

**II.     Discussion**

    **A.     Rule 12(b)(6) Standard**

A court may dismiss a complaint for "failure to state a claim upon which relief can be

granted."[1] To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[4] but requires more than "a sheer possibility."[5]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly* seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[6] *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus,

---

[1] Fed. R. Civ. P. 12(b)(6).

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[4] *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009).

[5] *Id.*

[6] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[7] *Id.* (citing *Twombly*, 550 U.S. at 556).

[8] *Iqbal*, – U.S. –, 129 S. Ct. at 1949-50.

the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

If the court on a Rule 12(b)(6) motion looks to matters outside the complaint, the court generally must convert the motion to a Rule 56 motion for summary judgment. However, the court may consider documents which are referred to in the complaint.[12]

### B. Count I—Breach of Contract

Defendants Bentley and the Trust contend that the Complaint fails to adequately plead breach of contract. Plaintiffs admit that Bentley and the Trust were not parties to the Agreement. Plaintiffs assert, however, that Bentley should be held liable under a "reverse alter ego" theory. Plaintiffs also assert that Bentley and the Trust should be held liable because they breached their fiduciary duty to plaintiffs. Bentley and the Trust correctly assert that plaintiffs do not adequately plead either claim. In fact, the Complaint does not mention either theory, and plaintiffs have not requested leave to amend. These grounds alone are sufficient to grant defendants' motion. Nonetheless, the Court briefly addresses the merits of each theory.

---

[9]*Id.* at 1950.

[10]*Id.*

[11]*Id.* at 1949.

[12]*See GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384-85 (10th Cir. 1997).

1.   **Reverse Alter Ego**

An alter ego theory imposes liability on an individual who uses a corporation to conduct personal business.[13] When a court determines that a corporation is an alter ego of an individual, the court disregards the corporate entity and holds the individual responsible for the acts of the corporation.[14] Such an imposition of liability is appropriate when the corporation acts fraudulently or unjustly towards a third party.[15] This case differs from the traditional alter ego theory because plaintiffs seek to hold a corporation liable for the actions of an individual. The Tenth Circuit has stated that absent a "clear statement" under state law that reverse alter ego liability is appropriate, federal courts should not hold a corporation liable for the acts of the individual.[16]

The Kansas Supreme Court has only once addressed a variant of the reverse alter ego theory, using a reverse alter ego-type analysis to assert personal jurisdiction over a corporation.[17] The Tenth Circuit considered the Kansas Supreme Court's analysis and determined that Kansas did not reach the question of whether the assets of the corporation could be reached.[18] Thus, although Kansas applied reverse alter ego concepts in *Farha*, the Kansas Supreme Court did not hold that reverse alter ego liability was appropriate.[19] Kansas has not clearly adopted reverse

---

[13]*Sampson v. Hunt*, 665 P.2d 743, 751 (Kan. 1983).

[14]*Id.*

[15]*Commerce Bank, N.A. v. Liebau-Woodall & Assocs., L.P.*, 20 P.3d 88, 93 (Kan. Ct. App. 2001).

[16]*Floyd v. I.R.S.*, 151 F.3d 1295, 1299 (10th Cir. 1998) (applying Kansas law).

[17]*See generally Fahra v. Signal Cos.*, 532 P.2d 1330 (Kan. 1975).

[18]*Floyd*, 151 F.3d at 1299 n.4.

[19]*Id.*

alter ego liability and, thus, plaintiffs cannot use reverse alter ego to hold Bentley liable.[20]

To support their assertion of reverse alter ego liability, plaintiffs point to a bankruptcy court decision where the court considered Kansas law and allowed reverse alter ego liability. In *In re Mid-west Metal Products, Inc.*,[21] the court recognized that no Kansas court had permitted reverse alter ego liability but concluded it was equitable to do so.[22] However, this case does not permit this Court to apply reverse alter ego liability, as it was decided a full seventeen years prior to the Tenth Circuit's "clear statement" requirement.[23] Thus, plaintiffs have not presented legal authority sufficient to overcome the Tenth Circuit's directive.

Plaintiffs also argue that reverse alter ego liability is equitable because the typical concern of harming third party shareholders and creditors is not present in this case. The Tenth Circuit has cited concern for third parties as a primary reason to refuse reverse alter ego liability.[24] The court admitted that in some cases there would be no third party shareholders or creditors to protect.[25] The court stated that even if no third parties would be harmed, it would not adopt "such a potentially problematic doctrine" absent a clear statement under state law.[26] Given the strong language of the Tenth Circuit's requirement, this Court will not apply reverse alter ego

---

[20]*Id.*

[21]13 B.R. 562 (D. Kan. 1981). Plaintiffs also cite *United States v. Hermreck*, No. 91-2457, 1992 WL 396351 (D. Kan. 1992), where the district court discussed but then denied the application of reverse alter ego liability. *Id.* at *2. Not only does this case not support the application of reverse alter ego, but it was decided by a federal court prior to the Tenth Circuit's clear statement requirement. *See id.*

[22]*Id.*

[23]*See id.* at 562.

[24]*Floyd*, 151 F.3d at 1299.

[25]*Id.* at 1300.

[26]*Id.*

liability even though it is unlikely that imposing such liability would harm a third party.

    2.    **Fiduciary Relationship**

Defendants Bentley and the Trust also contend that plaintiffs failed to adequately plead a fiduciary relationship, and thus Bentley and the Trust cannot be held liable under the Agreement. Kansas law recognizes two forms of fiduciary relationship: those specifically created by contract and those that are implied by law because of the nature of the relationship.[27] A fiduciary relationship exits when one party places such "special confidence" in another.[28] Because the analysis is highly case specific, the Kansas Supreme Court determined it would be inappropriate to give an exact definition of what creates a fiduciary relationship.[29]

In regards to Bentley, the Complaint alleges that it was a funding entity created under the Agreement and that all fees from third parties were paid to Bentley. Plaintiffs do not allege facts that support an inference that the Agreement created a fidcuary relationship between plaintiffs and the funding entities. Nor does the Complaint state any facts that indicate the nature of the relationship between Bentley and plaintiffs. The Complaint's bare statement that funds were paid to Bentley and not advanced to plaintiffs, is not enough to rise to the level of a facially plausible claim. The facts supporting a fiduciary relationship between plaintiffs and the Trust are even less sufficient. The Complaint states that, in paying Bentley, third parties indirectly paid the Trust. No facts in the Complaint describe a relationship of confidence between the Trust and plaintiffs. Additionally, as Bentley and the Trust note, the Complaint neither lists the breach of a fiduciary relationship as a cause or action nor gives any indication that the plaintiffs

---

[27]*Daniels v. Army Nat'l Bank*, 822 P.2d 39, 42 (Kan. 1991).

[28]*Denison State Bank v. Madeira*, 640 P.2d 1235, 1241 (Kan. 1982).

[29]*Id.*

7

intend to assert that a fidcuary relationship existed. Thus, plaintiffs have failed to adequately plead a fiduciary relationship.

As the Complaint fails to set out a facially plausible claim of a fidcuary relationship, plaintiffs cannot maintain a breach of contract claim based on this relationship. Because plaintiffs cannot assert a reverse alter ego theory against Bentley nor were Bentley and the Trust parties to the Agreement, plaintiffs cannot maintain a breach of contract claim against Bentley or the Trust, and defendants' motion to dismiss Count I is granted.

### C.     Count II—*Quantum Meruit*

Defendants Hall, Bentley, and the Trust contend that plaintiffs do not assert a facially plausible claim of *quantum meruit*, and that plaintiffs cannot sue on this theory because a valid contract exists. Plaintiffs argue that the *quantum meruit* claim is a valid use of alternative pleading, and that they may elect remedies when the theories are submitted for trial.

In order to state a claim for *quantum meruit*, the plaintiff must adequately allege that (1) a benefit was conferred upon the defendant by the plaintiff, (2) the defendant knew of or appreciated the benefit, and (3) the defendant's acceptance or retention of the benefit without payment creates inequity.[30] A quasi contract based on unjust enrichment is created on the basis of justice and equity, regardless of the assent of the parties, and is a legal device used to enforce noncontractual duties.[31] "A contract implied in fact arises from facts and circumstances showing mutual *intent* to contract."[32] Kansas law recognizes *quantum meruit* as an equitable claim for

---

[30]*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.,* 910 P.2d 839, 848 (Kan. 1996).

[31]*Sec. Ben. Life Ins. Corp. v. Fleming Cos.,* 908 P.2d 1315, 1323 (Kan. Ct. App. 1995).

[32]*Mai v. Youtsey,* 646 P.2d 475, 479 (Kan. 1982) (emphasis in original).

8

relief to permit recovery where no valid contract exists.[33]

In support of their claim that *quantum meruit* can be pled in the alternative, plaintiffs cite *Ireland v. Dodson*[34] and *Delta Groups Engineering, Inc. v. Sprint Spectrum, L.P.*[35] These cases, however, do not fully support plaintiffs' proposition. In both *Ireland* and *Delta Groups*, the parties contested whether a valid contract existed between the parties and thus, both a breach of contract and a *quantum meruit* claim were permitted. Similarly, defendants cite *Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*,[36] in support of their position that when a contract addressing the issue exists, *quantum meruit* is inappropriate. In *Fusion*, however, the parties agreed that a valid contract existed and, like *Ireland* and *Delta Groups*, only parties to the agreement were represented.[37] Taken together, the authorities cited by the parties indicate that *quantum meruit* is a plausible claim when the existence of the contract is disputed[38] or no contract exists that binds the parties to the action.[39]

By contrast, this case involves additional entities who were not a party to the contract. Although plaintiffs allege that a valid contract exists obligating all of the defendants, the Court has ruled that Bentley and the Trust are not parties to the Agreement. Further, while defendants correctly contend that *quantum meruit* cannot be pled in the alternative when a valid contract

---

[33]*Scott v. Raudiin McCormick, Inc.*, No. 08-4045-EFM, 2009 WL 3561301, at *15 (D. Kan. Oct. 30, 2009) (citations omitted).

[34]704 F. Supp. 2d 1128 (D. Kan. 2010).

[35]229 P.3d 420 (Kan. Ct. App. 2010).

[36]934 F. Supp 1270 (D. Kan 1996).

[37]*Id.* at 1275.

[38]*See generally Ireland*, 704 F. Supp. 2d 1128, *Delta Groups*, 229 P.3d 420.

[39]*See generally Fusion*, 934 F. Supp. 1270.

exists, no contract bound Bentley and the Trust.[40] Because no valid breach of contract claim exists against Bentley and the Trust, plaintiffs may assert a claim of *quantum meruit* against these defendants.

Defendants also argue that plaintiffs did not plead a facially plausible *quantum meruit* claim. The Complaint alleges that third parities paid Bentley directly and Bentley did not forward the payments to plaintiffs.[41] Additionally, plaintiffs allege that through Bentley, the Trust was indirectly paid and has not forwarded proceeds to plaintiffs.[42] This is sufficient indication of an unjust enrichment that Bentley and the Trust appreciated and retained to survive a motion to dismiss. Bentley and the Trust's motion to dismiss the *quantum meruit* claim is denied.

Hall, on the other hand, stands in a different position than Bentley and the Trust. Plaintiffs' Complaint alleges that "Individual Plaintiffs and Individual Hall entered into the Contract, and the Contract (Exhibit A) is valid and enforceable."[43] The Complaint clearly alleges that a valid, express contract exists. Unlike the plaintiffs in *Ireland* and *Delta Groups*, plaintiffs have never disputed that Hall entered into a valid contract.[44] Because it is undisputed that the parties' relationship was governed by the written Agreement, plaintiffs have no right to relief against Hall based on a *quantum meruit* theory. Accordingly, Hall's motion to dismiss Count II is granted.

---

[40]*Id.*

[41](Doc. 1 at 5.)

[42]*Id.*

[43](Doc. 1 at 7.)

[44]*See generally Ireland*, 704 F. Supp. 2d 1128, *Delta Groups*, 229 P.3d 420.

Because the Court does dismiss Bentley and the Trust, it does not reach plaintiffs' judicial economy argument.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Bentley and the Trust's Motion to Dismiss (Doc. 9) is **granted in part**. The Court dismisses the breach of contract claim in Count I as to these defendants and denies dismissal as to the *quantum meruit claim* in Count II.

**IT IS FURTHER ORDERED** that defendant Hall's Motion to Dismiss Count II (Doc. 10) is **granted**.

**IT IS SO ORDERED.**

Dated: April 14, 2011

                                                S/ Julie A. Robinson
                                                JULIE A. ROBINSON
                                                UNITED STATES DISTRICT JUDGE